***NOT FOR PUBLICATON***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA,<br>　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A., as Securities Intermediary,<br><br>　　　　Defendant. | Civil Action No. 21-9959 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

　　This dispute arises out of a $9 million life insurance policy. Plaintiff, Sun Life Assurance Company of Canada ("Plaintiff"), alleges that the policy is an illegal stranger-oriented life insurance ("STOLI") policy and seeks declaration that the policy is void *ab initio*. Defendant, Wells Fargo Bank, N.A., as Securities Intermediary ("Defendant"), the owner and beneficiary of the policy, seeks to collect the policy's death benefit. Before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 6.) In the alternative, Defendant moves to transfer the case to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes the Motion (ECF No. 9.), and Defendant filed a Reply (ECF No. 10.) For the following reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, to Transfer Venue is **DENIED**.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*A. The Policy*

Plaintiff is a life insurance company organized and existing under the laws of Canada with its principal place of business in Massachusetts.[1] (ECF No. 1 ¶ 1.) Defendant is a national banking association with its main office in South Dakota. (*Id*. ¶ 2.) In or around July 2007, Plaintiff received an application for a life insurance policy (the "Application") insuring the life of Tova Fruchter. (*Id*. ¶ 16.) The Application contains two parts—Parts I and II. Part I of the Application, dated July 16, 2007, is signed by former New York resident, Tova Fruchter (the "Insured"), her son, New York resident Eli Fruchter, as the Trustee (the "Trustee"), and Alter Rubin as the Broker/Registered Representative. (*Id*. ¶ 18.). According to the documents contained in the policy file, Plaintiff's communications with Mr. Rubin in connection with the policy transpired at one of Mr. Rubin's New Jersey addresses, which is located at the offices of Associated Life Brokerage, Inc./Capitas. (ECF No. 9-7 ¶ 7 (Affidavit of Michelle Wilkosky).) Part II of the Application, also dated July 16, 2007, is signed by the Insured. Both Parts were signed at Lakewood, New Jersey. (ECF No. 9-7 ¶ 4.) The Application identified the Trust as established in New Jersey. (ECF No. 1, at ¶ 18; ECF No. 9-1, Ex. A, at 31.)

On August 8, 2007, Plaintiff issued a policy (the "Policy") insuring the life of the Insured in the amount of $9,000,000. (ECF No. 9-1 at 4.) The Policy designates the Fruchter One Trust DTD 3/1/2007 (the "Trust") as the initial owner and beneficiary of the Policy. (*Id*.) In connection with the Policy transaction, Plaintiff also received a Non-Licensed Territory Declaration (the "Declaration") dated March 1, 2007. The Declaration states that "no solicitation was ever made in

---

[1] On a motion to dismiss for lack of personal jurisdiction, the Court may consider extrinsic evidence, such as affidavits and exhibits. *See In re Asbestos Product Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

the State of New York in connection with the life insurance application dated 3/01/07" and "[w]e are fully aware that Sun Life Assurance Company of Canada and Sun Life Assurance Company of Canada (U.S.) are non-New York companies and that they cannot issue [policies to] New York residents unless the solicitation, sale and delivery of their contracts takes place outside of the State of New York." (ECF No. 9-2, Ex. B, at 2.) The Declaration was signed in Lakewood, New Jersey by the Insured, the Trustee and Mr. Rubin. (*Id*.)

On September 10, 2007, Eli Fruchter, as Trustee, signed a Request for Alteration of Application Amending the Application at Lakewood, New Jersey, in the presence of Mr. Rubin, (ECF No. 9-7 ¶ 5; ECF No. 9-1, Ex. A, at 30), as well as a Life Insurance Policy Dating Acknowledgement and Delivery Receipt Form (the "Delivery Receipt"). Mr. Fruchter acknowledged that "by signing below, [the signee] confirm[s] that [he or she has] received, reviewed and accepted the policy" and "[t]he company will retain this document as evidence that the policy has been delivered to [the signee] on the date shown." (ECF No. 9-4, Ex. D, at 2.)

After the Policy was issued on August 8, 2007, the Policy's owner and beneficiary changed several times. On July 15, 2010, the Trust changed the owner and beneficiary of the Policy to Dukes Bridge LLC ("Dukes Bridge"). (ECF No. 1. ¶ 32.) On December 29, 2010, Dukes Bridge changed ownership and beneficiary to Manufacturers and Traders Trust Company ("Manufacturers"), as securities intermediary. (*Id*. ¶ 33.) On March 15, 2012, Defendant, as securities intermediary, acquired the Policy as owner and beneficiary from Manufacturers. (*Id*. ¶ 34). On May 21, 2014, Defendant changed the owner and beneficiary of the Policy to Wilmington Trust, N.A., as securities intermediary, but reacquired the Policy from Wilmington Trust, N.A. on October 31, 2018, and remains the current record owner and beneficiary. (*Id*. ¶ 36.)

3

  B. *The Present Litigation*

  On January 16, 2021, the Insured passed away. (ECF No. 1 ¶ 37.) Defendant submitted a death claim and Plaintiff conducted a claim review. On April 21, 2021, Plaintiff filed this action against Defendant in its capacity as securities intermediary. Plaintiff seeks a declaration that the policy lacks an insurable interest and is void *ab initio* under New Jersey law. (*Id.* ¶ 45.) On May 26, 2021, Defendant commenced its own action against Plaintiff in the United States District Court for the Eastern District of New York to recover the Policy death benefits from Plaintiff. *Wells Fargo Bank, N.A., as Securities Intermediary v. Sun Life Assurance Co. of Canada*, No. 21-2984 (E.D.N.Y.). Defendant voluntarily dismissed that action on August 10, 2021. In the instant matter, Defendant moves to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue.

## II. LEGAL STANDARD

  In a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to present evidence establishing a *prima facie* case of personal jurisdiction over the defendant. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Although a court initially takes the allegations of the complaint as true, once a defendant raises a jurisdictional defense, a plaintiff bears the burden of proving that jurisdiction is proper by affidavits or other competent evidence. *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 382 (D.N.J. 2016) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). If the court does not hold an evidentiary hearing on the motion to dismiss, however, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

  "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing Fed. R. Civ. P. 4(e);

*see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 144 (3d Cir. 1992)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). Thus, courts examine whether, under the Due Process Clause, the defendant possesses "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

The two forms of personal jurisdiction are general jurisdiction and specific jurisdiction. *Metcalfe*, 566 F.3d at 334. Minimum contacts are analyzed in the context of both types of personal jurisdiction. *Id*. General jurisdiction is proper where a defendant has "continuous and systematic" contacts with the forum and may exist even if the plaintiff's' cause of action arises from the defendant's non-forum related activities. *See Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001). If the defendant's conduct falls short of the "continuous and systematic" contacts standard, then at least one contact must give rise or relate to the plaintiff's claim for specific jurisdiction to apply. *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 321 (3d Cir.2007) (internal citation omitted).

### III.   DISCUSSION

#### A.  *Specific Personal Jurisdiction*[2]

To determine whether specific personal jurisdiction exists, the Court undertakes a three-part inquiry: whether Plaintiff has shown (1) that Defendant "purposefully directed [its] activities at [New Jersey];" (2) Plaintiff's claims "arise out of or relate to at least one of those activities;" and (3) "the exercise of jurisdiction otherwise comport[s] with 'fair play and substantial justice.'"

---

[2] Plaintiff does not raise any arguments in favor of general jurisdiction in its opposition to Defendant's motion to dismiss for lack of personal jurisdiction. (*See generally* ECF No. 9). Accordingly, the court only considers the parties' arguments on specific personal jurisdiction.

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotations and citations omitted).

### i. Minimum Contacts

Regarding the first part of this inquiry, Defendant argues that this Court cannot properly exercise specific personal jurisdiction over Defendant because it "did not perform a single act relating to the Policy in New Jersey." (ECF No. 6-1 at 17.) Defendant contends that Plaintiff "issued the Policy insuring the life of a New York resident in 2007 long before and without any involvement of [Defendant]" and "[t]he Policy was issued to the Trust, which was created under and subject to New York law in New York, as owner and beneficiary." (*Id*. at 15.) Further, Defendant notes that it currently holds the Policy on behalf of its current client which is not based in New Jersey and has no connection to New Jersey (ECF No. 6-7 ¶ 6 (Declaration of Paul M. Fritz).). To Defendant's knowledge, all communications between Defendant and its current client have occurred outside of the state of New Jersey. (*Id*.) According to Defendant, the record indicates that "[a]ll of the actions performed by [Defendant] in connection with the Policy were performed from offices located in a state other than the State of New Jersey." (*Id*. ¶ 7.) For example, "[s]ince becoming the owner of record for the Policy, [Defendant] has transmitted premium payments for the Policy to [Plaintiff] [which] have all been transmitted by [Defendant] from a bank account established and maintained in a state other than the State of New Jersey . . . ." (*Id*. ¶ 8.) Defendant has also received documents related to the Policy from Plaintiff, but Defendant maintains that "all of these documents have been received by [Defendant] at offices" located outside of New Jersey. (*Id*. ¶ 9.) In sum, Defendant argues that it has not otherwise "performed any action in or from New Jersey in connection with the Policy and has not directed any action into New Jersey in connection with the Policy." (*Id*. ¶13.)

6

Plaintiff argues Defendant "purposefully availed itself of New Jersey by knowingly acquiring a New Jersey policy." (ECF No. 9 at 18.) Plaintiff enumerates several reasons in support of its argument that the Policy is a New Jersey insurance policy contract. First, Plaintiff notes that the Policy and Application were written on specific forms that were approved for use, and being used by Plaintiff, in New Jersey at the time the Policy was applied and issued for delivery. (ECF No. 9-7 ¶ 8.a.-b. (Affidavit of Michelle Wilkosky).) Next, Plaintiff points out that the "Application and the Request for Alteration of the Application were signed in New Jersey." (*Id*. ¶8.d.) Plaintiff also argues that "[t]he policy was delivered in New Jersey as confirmed by the Life Insurance Acknowledgement and Delivery Receipt form [] received by [Plaintiff] and confirming delivery to the Policy owner on September 10, 2007 in Lakewood, New Jersey." (*Id*. ¶ 8.e.) Finally, Plaintiff maintains that "[i]n most states, insurance companies like [Plaintiff] are required to pay insurance premiums taxes to the state in which those premiums are collected, which in this case was New Jersey so the premium taxes were paid to the State of New Jersey." (*Id*. ¶ 8.f.)

Two recently decided cases involving STOLI claims in this district inform this Court's analysis. In the first case, *Lincoln Benefit Life Co. v. Wells Fargo Bank*, the court found specific personal jurisdiction over both Wells Fargo and the trust in connection with a life insurance company's claim that a policy lacked an insurable interest. No. 17-02905, 2017 WL 4953904 (D.N.J. Nov. 1, 2017), *recon. denied* 2017 WL 6539244 (D.N.J. Dec. 20, 2017). In *Lincoln Benefit*, the following facts are relevant: (1) the trust and the trustee were located in New York at all times; (2) the policy application and amendment to the policy were signed in New Jersey and (3) the policy contained a conformity with state law provision subjecting the certificate to the laws where the application was signed and insured a New Jersey resident. *Lincoln Benefit*, 2017 WL 4953904, at *3. Regarding the location of the trust and trustee, the court agreed with the plaintiff that "facts

of the Trust and [the Trustee's] situs in New York do not negate the Trust's contacts with New Jersey for the purposes of executing the application materials." *Id*. (internal quotations omitted.) Additionally, "the state in which the policy was signed, and thus where the cause of action initially arose, is dispositive." *Id*. (citing *Remick*, 238 F.3d at 255 (3d Cir. 2011); *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 649 A.2d 379, 387 (N.J. 1994).) Most importantly, the court found that "Wells Fargo's relation to the New Jersey policy gives rise to personal jurisdiction," *id*. at *4, because "Wells Fargo owns and holds a substantial interest in a policy that on its face is governed by New Jersey Law." *Id*.

The second recent STOLI case, *West Coast Life Ins. Co. v. Wells Fargo* (*"Waldman"*), similarly involved a challenge to the validity of a life insurance policy brought by an insurer against Wells Fargo. No. 20-04350, 2021 WL 302919, at *3 (D.N.J. Jan. 29, 2021), *recon. denied* 2021 WL 2712152 (D.N.J. July 1, 2021). In *Waldman*, the court denied Wells Fargo's motion to dismiss for lack of personal jurisdiction and its alternative motion to transfer on the same ground that Wells Fargo had sufficient minimum contacts with New Jersey. *Waldman*, 2021 WL 302919, at *6. *Waldman* presented nearly identical facts as *Lincoln Benefit*: a trustee and situs of the trust located in New York; a policy application signed by the trustee, decedent, and insurance agent in New Jersey; and a medical portion of the policy signed in New York. *Id*. at *6.

Here, the facts before this Court are largely analogous to those in *Lincoln Benefit* and *Waldman*. Contrary to Defendant's argument that the Policy is a New York policy, the Policy in this case also appears to be printed on New Jersey forms as "NJ" appears on the bottom of the cover page of the Policy and other pages. (ECF No. 9-1 at 1, 11, 14-15, 17, 20-23). And, here, too, "[i]mportantly, the application was signed in Lakewood, New Jersey" on July 16, 2007, by the Insured, the Trustee and the broker/representative, Mr. Rubin. Indeed, the Policy's and

Application's forms as well as the signing of the Application and confirmation of delivery in Lakewood, New Jersey affirm that the policy at issue is a New Jersey life insurance policy. Just as in *Lincoln Benefit* and *Waldman*, Defendant argues that that the Trustee was a resident of New York and the situs of the Trust was located in New York. (ECF No. 6-1 at 2.) I find these facts less probative for the purpose of assessing Defendant's contacts with New Jersey, as neither the residency of the Insured nor the situs of the Trust outweigh the central fact that the place of contracting was New Jersey, and that Defendant procured a New Jersey policy.[3] *See Waldman*, 2021 WL 302919, at *5; *Lincoln Benefit*, 2017 WL 4953904 at *3. Defendant further argues that this Court should not exercise specific jurisdiction because Defendant was not involved in the Policy's procurement, application or delivery in New Jersey. (ECF No. 6-1 at 14.) However, the fact that Defendant acquired a New Jersey policy and that it is the current record owner and beneficiary of the Policy constitute sufficient minimum contacts. *Id*. at *4.

      ii.        <u>Relatedness</u>

With respect to the second part of the personal specific jurisdiction analysis, the Court now considers whether this litigation "arise[s] out of or relate[s] to at least one" of Defendant's forum-related activities. *D'Jamoos*, 566 F.3d at 103 (internal quotations omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (184) and citing *O'Connor*, 496 F.3d at 317). Although the Third Circuit has yet to adopt a bright-line test for the relatedness requirement,

---

[3] Some courts have addressed which state law governs insurance policies in the context of personal jurisdiction. *See Waldman*, 2021 WL 302919, at *6; *Lincoln Benefit*, 2017 WL 4953904 at *3. But, because choice-of-law provisions are not dispositive to analysis of whether personal jurisdiction exists, the Court need not address this issue. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984) (noting that a choice-of-law provision is "a factor in showing whether the defendants could foresee that their acts would have effects in [the forum state], [it] would not itself be enough to vest jurisdiction"; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985) ("a [choice-of-law] provision standing alone would be insufficient to confer jurisdiction.").

"[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *O'Connor*, 496 F.3d at 322. Here, this lawsuit over the validity of the Policy "arises out of or relates" to Defendant's ownership and interest in a New Jersey policy that makes litigation in New Jersey reasonably foreseeable. "Defendant's contacts are relevant to the merits of each of Plaintiff's claims and Plaintiff has shown a prima facie case of minimum contacts." *Walden*, 2021 WL 302919, at *7.

### iii. Fair Play and Substantial Justice

Personal jurisdiction over Defendant comports with fair play and substantial justice. These jurisdictional requirements demand that it "be reasonable to require the defendant to defend the suit in the forum state." *Am. Estates Wines, Inc.*, 2008 WL 819993, at *3 (citing *World–Wide Volkswagen*, 444 U.S. at 292). Here, Defendant has not presented any argument in its Motion to Dismiss and Reply concerning fair play and substantial justice. (*See generally*, ECF No. 6; ECF No. 10.) However, Plaintiff argues this Court's exercise of personal jurisdiction over Defendant comports with fair play and substantial justice because (1) "litigating this case in New Jersey will not burden [Defendant] in any way"; (2) New Jersey "has a strong interest in having the validity of a New Jersey policy litigated in New Jersey"; (3) its choice of this "New Jersey forum is entitled to deference;" (4) "the interstate judicial system's interest in efficiency will be promoted by having this case litigated in New Jersey because New Jersey law plainly governs [the Policy]"; and (5) the "states' shared interest in furthering social policies will be advanced by having this lawsuit litigated in New Jersey." (ECF No. 9 at 24-26.)

Courts in this district find jurisdiction proper where a plaintiff satisfies the first two prongs of the specific personal jurisdiction analysis, and the defendant offers no substantive argument concerning the third requirement of fair play and substantial justice. *See Batinkoff v. Church &*

*Dwight Co.*, No. 18-16388, 2020 WL 1527957, at *13 (D.N.J. Mar. 31, 2020) ("Because [Defendant] has not presented a compelling case of unreasonableness, the Court holds jurisdiction in New Jersey comport[s] with fair play and substantial justice") (internal quotations and citations omitted); *In re Bulk (Extruded) Graphite Prod.*, No. 02-6030, 2007 WL 2212713, at *10 (D.N.J. July 30, 2007) (finding defendant's conclusory statement that it would be unfair to subject defendant to personal jurisdiction in an alien forum with which he has no contacts inadequate after the court addressed the issue of minimum contacts); *Varela v. Pee Dee Med. Collection Servs.*, No. 18-17196, 2019 WL 2083297, at *3 (D.N.J. May 6, 2019), *report and recommendation adopted*, No. 18-17196, 2019 WL 2210802 (D.N.J. May 21, 2019) ("The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal quotations and citations omitted). Here, Defendant has not presented a "compelling case" of unreasonableness. As such, the Court finds exercising personal jurisdiction over Defendant accords with fundamental notions of "fair play and substantial justice."

Plaintiff has established all three parts of this Circuit's specific personal jurisdiction test.[4] *O'Connor*, 496 F.3d at 317. Accordingly, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.

---

[4] Plaintiff also argues that Defendant is subject to personal jurisdiction as the successor in interest to the Trust. (ECF No. 9 at 19–23.) However, I need not address that argument since I have already found there is personal jurisdiction over Defendant.

B. *Transfer Under 28 U.S.C. 1404(a)*

Having found personal jurisdiction over Defendant, the Court turns to Defendant's Alternative Motion to transfer this action to the Eastern District of New York under 28 U.S.C. § 1404 (a).

For the "convenience of the parties and witnesses, in the interests of justice," Section 1404(a) permits a district court to transfer any civil action to another district where it might have been originally brought or consented to by all parties. In deciding a motion to transfer, courts first determine whether the alternative transferee district is a venue in which the suit "might have been brought." 28 U.S.C. § 1404(a); *Kalawa v. United States*, No. 19-16089, 2020 WL 3603205, at *3 (D.N.J. July 2, 2020) (citing *Solomon v. Cont'l Am. Life. Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973)). Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "The decision whether to transfer falls in the sound discretion of the trial court." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000) (citations omitted). In exercising its discretion, the court weighs relevant factors enunciated by the Supreme Court and further developed by the Third Circuit. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 62-63 (2013). In *Jumara*, the Third Circuit provided a list of private and public interests protected by Section 1404(a). The private factors are:

> [P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted). The public interest factors are:

> [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-80 (internal citations omitted). The moving party has the burden of demonstrating that transfer is not only adequate but more appropriate. *See Myers v. American Dental Ass'n*, 695 F.2d 716, 732 (3d Cir. 1982) (Garth, J., concurring in part and dissenting in part); *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (noting a transfer motion "must not be lightly granted") (further citations omitted); *Hoffer v. InfoSpace.com. Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000) (collecting cases).

Here, Defendant argues that venue is appropriate in the Eastern District of New York since it commenced an action there, paid premiums from New York, and the Policy was solicited and delivered in New York. (ECF No. 6-1 at 25.) Additionally, Defendant notes that the Trustee of the Trust was a New York resident, and the Trust was governed by New York law. (*Id*.) Further, Defendant argues that because Mr. Rubin had offices in New York, "it is plausible that the acts he performed in connection with the solicitation, negotiation, sale and delivery of the Policy all took place in New York, which is where the Insured resided when all of the foregoing conduct occurred." (*Id*. at 26.) On the other hand, Plaintiff argues that "venue is proper in New Jersey

13

because this lawsuit concerns a New Jersey policy that was issued and delivered in New Jersey, where [the Defendant's] predecessor, the Trust purposely placed this Policy transaction." (ECF No. 9 at 27.)

The Court finds that Defendant has raised sufficient New York contacts to render New York "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). However, as noted in *Lincoln Benefit* and *Walden*, "in cases where a plaintiff seeks declaratory judgment to find a life insurance policy void *ab initio* for lack of an insurable interest, the state in which the policy was signed [is] thus where [the] cause of action initially arose." *Walden*, 2021 WL 302919, at *9 (citing *Lincoln Benefit*, 2017 WL 4953904, at *3 (citations omitted). The Complaint and record in this case indicate that the Policy application was signed in Lakewood, New Jersey. (ECF No. 1 ¶ 18; ECF No. 9-1 at 37.) As such, I find that while venue would be proper in the Eastern District of New York, New Jersey is the most appropriate venue. Indeed, the private and public interests effected by a transfer also weigh against transfer to the Eastern District of New York.

i. Private Interest Factors

The Court turns to the parties' arguments pertaining to the private interest factors. Defendant argues that the private interest factors weigh in favor of transfer to the Eastern District of New York "considering that New York law should apply to this dispute, and most of the evidence relevant to the dispute is in New York." (ECF No. 6-1 at 27.) As to the convenience of the parties and witnesses, Defendant contends these factors favor transfer to the Eastern District of New York because, "although [the parties] are located outside of New York and New Jersey, the Trust was formed in New York and the Trustee and Rubin appear to be located in New York." (*Id.* at 27-28.) Consequently, Defendant claims that "many of the trial witnesses are likely to be

14

located in New York and [] the Eastern District of New York likely presents a more convenient venue for these witnesses." (*Id*. at 28.) Lastly, Defendant notes "there is no indication at this time as to whether records could not be produced in this forum." (*Id*.)

Regarding the private interest factors, Plaintiff argues its choice of a New Jersey forum is "entitled to great deference" and merits greater weight than Defendant's choice of forum.  (ECF No. 9 at 34). Plaintiff also argues that its claims "arose in New Jersey because the transaction is a New Jersey policy" and Defendant would not incur hardship by litigating Plaintiff's claims in New Jersey, because it has "hundreds of New Jersey business locations, and [] attorneys with STOLI litigation expertise located a short distance away from New Jersey in New York City." (*Id*.) As to the convenience of witnesses and evidence location, Plaintiff argues these factors are "not significant as witnesses and evidence are likely scattered across the country—including New Jersey (where the Policy transaction was conducted and the insurance producers are located), New York (where the insured and Trustee resided), Massachusetts (where [Plaintiff] is headquartered) and California (where [Defendant] is headquartered)." (*Id*. at 28.) Finally, Plaintiff notes "the location of evidence has been "significantly reduced as a factor due to technological advances." (*Id*. at 29.)

With respect to the first two private factors, the preferences of the plaintiff and defendant, the plaintiff's forum choice is a "paramount consideration in any determination of a transfer request" and outweighs Defendant's preference here. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970). As noted above, I find that because the Policy was signed in New Jersey, and the claim arose there, the third factor weighs in Plaintiff's favor. "In considering the 'convenience of the parties,' [d]istrict [c]ourts focus on the relative physical and financial condition of the parties." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518 at 553 (D.N.J. 2000) (citing

15

*Jumara,* 55 F.3d at 879). This factor slightly favors Plaintiff as Defendant has made no argument that it would incur any financial hardship by litigating in New Jersey. As to the convenience of witnesses, although the Court agrees with Defendant that the Eastern District of New York may be a more convenient venue for certain witnesses, such convenience is only considered "to the extent the witnesses may actually be unavailable for trial in one of the fora," *Jumara*, 55 F.3d at 879, and there is no indication that any witness would be unavailable for trial in either New Jersey or New York. This factor is, therefore, neutral. Finally, the Court must consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879. The Court acknowledges that "the technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis," *Lomanno v. Black*, 285 F.Supp.2d 637, 647 (E.D.Pa.2003), and finds that "[w]here, as here, there is no evidence to suggest that either parties' evidence would be unavailable in either forum, this factor caries no weight." *Dialight Corp. v. Allen*, No. 15-1090 (FLW)(LHG), 2015 WL 5996287, at *6 (D.N.J. Oct. 14, 2015) (internal quotations and citations omitted). Accordingly, I find the private interests weigh against transfer.

      ii.  Public Interest Factors

Defendant also sets forth various arguments in favor of transfer to the Eastern District of New York based on public interests. First, Defendant argues that it would "seemingly be easier, more expeditious, and less expensive to have a trial in New York where several key witnesses are likely to be located." (ECF No. 6-1 at 28.) Second, Defendant contends that New York likely has a greater interest, including a public policy interest, than New Jersey in hearing and adjudicating this dispute in its jurisdiction because of New York connections to the policy, including the residency of the Insured, and New York addresses associated with the Trust and insurance agent,

and Plaintiff's unauthorized insurance business in New York. (*Id*. at 28-29.) Lastly, Defendant notes that the "enforceability of any judgment and administrative difficulties do not appear to be an issue in either forum." (*Id*. at 29.)

Regarding the public interest factors, Plaintiff argues that "enforceability of judgment weighs in favor of this forum because this Court has personal jurisdiction over [Plaintiff] and [Defendant]." (ECF No. 9, at 35.) Further, Plaintiff contends that New Jersey has a "significant interest in having a dispute over a New Jersey policy that was delivered in New Jersey and that is subject to New Jersey law and regulation adjudicated in New Jersey." (*Id*.) Lastly, Plaintiff points out that "New Jersey courts are presumed to be more familiar than non-New Jersey courts with New Jersey law." (*Id*.)

Under the first public interest factor, the enforceability of the judgment, Defendant argues that it would not be an issue in either forum, while Plaintiff contends that this factor weighs in its favor because this Court has personal jurisdiction over both parties. Because Plaintiff does not argue that "it would not be bound by a New York judgment," the Court finds this factor neutral. *Walden*, 2021 WL 302919, at *10. The next factor—practical considerations for an easy, expeditious, or inexpensive trial—is also non-dispositive. Because this case is at an early stage and all potential witnesses have yet to be located, practical considerations do not favor one district over the other at this time, particularly since the two districts are not geographically distant from each other. Relatedly, the factor concerning administrative difficulty in the fora related to congestion weighs in neither party's favor as I find that there are no significant court congestion differences between this District and the Eastern District of New York. Further, I find that the public interest factor concerning local interests is also neutral. Plaintiff notes New Jersey's local interest in hearing a dispute over a New Jersey policy delivered in New Jersey, but the Court finds

that the New York connections are also important in a venue transfer analysis. *Id*. at *11. With respect to the public policies of the fora factor, notwithstanding Defendant's argument that Plaintiff may have conducted unauthorized insurance business in New York, as noted above, the Policy Application was signed in New Jersey (ECF No. 1 ¶ 18; ECF No. 9-1 at 37) and the Declaration explicitly states that "no solicitation was ever made in the State of New York in connection with the life insurance application." (ECF No. 9-2, Ex. B, at 2.) In that regard, both states may have an interest in protecting its citizens from fraudulent insurance practice. As such, this factor is neutral. The last factor, the familiarity of the trial judge with the applicable state law in diversity cases, is also in equipoise as both federal courts are similarly situated to apply other states' laws. Thus, I find that the public interest factors are largely neutral. However, when considered together with the private interest factors, I find that, overall, the *Jumara* factors weigh in favor of New Jersey and a transfer to the Eastern District of New York is not appropriate.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and its Alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) are **DENIED.**

**DATED**: December 20, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge